UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22505-CIV-ALTONAGA/O'Sullivan

**CARLOS MARTINEZ**, *et al.*,

    Plaintiffs,
v.

**DHL EXPRESS (USA) INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiffs, Carlos Martinez ("Martinez") and Ricardo Babich's ("Babich['s]") (collectively, "Plaintiffs[']") Motion for Conditional Certification ("Motion") [ECF No. 52], filed December 7, 2015. Defendant, DHL Express (USA) Inc. ("DHL" or "Defendant") filed an Opposition . . . ("Response") [ECF No. 65] on December 24, 2015. Plaintiffs filed a Brief in Further Support . . . ("Reply") [ECF No. 96] on December 30, 2015. Defendant filed a Sur-Reply . . . ("Sur-Reply") [ECF No. 127] on January 8, 2016. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

### I. BACKGROUND[1]

Plaintiffs work at Defendant's Miami International Airport ("MIA") facility. They bring this suit, on behalf of themselves and others similarly situated at Defendant's MIA, John F. Kennedy Airport ("JFK"), and Los Angeles International Airport ("LAX") facilities, challenging three "illegal and improper wage practices" (Am. Compl. ¶ 4) of their employer: (1) configuring

---

[1] The facts are taken from the Amended Complaint [ECF No. 16], filed on July 24, 2015, and the declarations submitted by the parties. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001) (suggesting district courts use the two-tiered approach to certification of FLSA collective actions, whereby they will usually rely on the pleadings and any affidavits submitted at the first stage).

time clocks in the facilities to round down and artificially reduce the amount of time employees are credited with performing work; (2) deducting thirty minutes for meal breaks from employee paychecks automatically even when employees have signed back in and are working prior to the end of the meal breaks; and (3) requesting employees perform work off-the-clock prior to clocking in and after clocking out. (*See id.* ¶¶ 4, 21–27). Plaintiffs allege the wage practices are the same at all three DHL facilities, with the exception of a slight difference in the rounding down of the DHL time clocks at JFK and LAX, as compared with the time clocks at MIA. (*See id.* ¶ 21).

On the basis of these purported illegal practices, Plaintiffs bring one claim[2] for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201 *et seq.*, seeking unpaid overtime compensation, interest, liquidated and punitive damages, injunctive relief, and attorney's fees. (*See* Am. Compl. ¶¶ 54–55). In the Motion, Plaintiffs seek: (1) conditional certification of their proposed collective action; (2) a court order requiring Defendant to furnish names, last known addresses, last known email addresses, and last known telephone numbers of putative class members; and (3) approval of their proposed Notice of Pendency and Consent to Join Form ("Proposed Notice") (*see* Decl. of Brett R. Gallaway . . . ("Gallaway Declaration") [ECF No. 53] Ex. H), as well as authority to circulate it to putative class members (*see* Mot. 1). Plaintiffs define the class for which they are requesting conditional certification under 29 U.S.C. sections 207 and 216(b) as follows:

> All hourly paid non-exempt Agents who worked at MIA (Miami), JFK (New York) and LAX (Los Angeles), who are or were employed within the three (3) years preceding the filing of this action by Defendant, and who were: (a) not compensated for all work performed while clocked-in; and/or (b) were not fully compensated for time worked over forty hours per week at overtime rates; and/or

---

[2] The Amended Complaint also contains minimum wage claims under the FLSA (*see* Am. Comp. ¶¶ 48–51) and under Florida law (*see id.* ¶¶ 56–62), claims which Plaintiffs withdrew and were formally dismissed. (*See* Sept. 4, 2015 Order [ECF No. 40] 2 n.3, 7)

(c) were not compensated for all work performed while off-the-clock (the "FLSA Collective Class").

(Am. Compl. ¶ 29).

Defendant opposes conditional certification, arguing Plaintiffs have failed to meet their burden in showing they are similarly situated to other putative class members, and other putative class members are interested in joining the litigation. (*See generally* Resp.). Plaintiffs, in Reply, argue they have provided sufficient evidence despite Defendant's arguments to the contrary, submitting declarations from additional Agents and other evidence in support. (*See generally* Reply). In its Sur-Reply, Defendant argues Plaintiffs have still failed to show they were similarly situated to other Agents and asks the Court to exercise its discretion and deny conditional certification. (*See generally* Sur-Reply). The Court considers these arguments below.

## II. LEGAL STANDARD

The FLSA permits a plaintiff to bring a collective action on behalf of similarly situated persons subject to the requirements that prospective plaintiffs file a written consent in the court in which the action is brought. *See* 29 U.S.C. § 216(b); *see also Hipp*, 252 F.3d at 1216. In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Nonetheless, notice should only be authorized in appropriate cases. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

In order to grant conditional collective action certification, the Court must, at a minimum, satisfy itself there are other employees who: (1) are similarly situated with regard to their job requirements and pay provisions; and (2) desire to opt-in to the case. *See id.* Regarding the first requirement, the plaintiff bears the burden of proving he and the class he seeks to represent are

similarly situated. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). To determine whether a plaintiff has demonstrated the existence of a similarly situated class, courts in the Eleventh Circuit use a two-tiered procedure that recognizes distinct burdens at different stages of the litigation process. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citing *Hipp*, 252 F.3d at 1218, and collecting cases). The first tier — the one at issue in the Motion — is referred to as the notice stage:

> At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, the putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Id.* (quoting *Hipp*, 252 F.3d at 1218).[3]

In addition to demonstrating he is similarly situated to other employees, a plaintiff must show there are other employees who would opt-in to the litigation if given notice. To satisfy the requirement, a "district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in.'" *Dybach*, 942 F.2d at 1567; *see also Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) ("[A] showing that others desire to opt-in must be made before notice is authorized." (alteration added; citations and

---

[3] The second tier of analysis, re-examining the question of certification after discovery is complete, follows a motion for "decertification" by the defendant:

> At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representative — i.e. the original plaintiffs — proceed to trial on their individual claims.

*Cameron-Grant*, 347 F.3d at 1243 n.2 (quoting *Hipp*, 252 F.3d at 1218).

footnote call number omitted)). The burden is on the plaintiff to produce evidence, rather than unsupported assertions, demonstrating other aggrieved individuals exist within the class he proposes. *See Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887–88 (11th Cir. 1983) (holding the district court properly declined to authorize notice to a prospective class where the only evidence presented was counsel's assertions FLSA violations were widespread and additional plaintiffs would come from other stores). If the plaintiff does not satisfy his burden, the Court should decline to certify a collective action "to avoid the 'stirring up' of litigation through unwarranted solicitation." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (quoting *Brooks v. BellSouth Telecomm., Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995)).

### III. ANALYSIS

Plaintiffs seek conditional certification of a collective action encompassing non-exempt International Service Agents ("Agents") from DHL's JFK, LAX, and MIA facilities. (*See* Am. Compl. ¶ 29). The Court finds Plaintiffs do not meet their burden as to Agents located at Defendant's JFK and LAX facilities (respectively, "JFK Agents," and "LAX Agents"), but do meet their burden with respect to Agents at MIA ("MIA Agents"). The Court begins by discussing whether there is a reasonable basis to believe Plaintiffs are similarly situated to putative class members. Next, the Court addresses whether there is sufficient evidence others desire to opt-in. Finally, the Court discusses Plaintiffs' request for class member contact information and for approval of the Proposed Notice.

**A. Similarly Situated Agents**

As noted, at this stage Plaintiffs must show: (1) they are similarly situated to other putative class members; and (2) there are other putative class members who desire to opt-in. *See Reyes v. AT&T Corp.*, 801 F. Supp. 2d 1350, 1355 (S.D. Fla. 2011). This burden is "not heavy"

and is satisfied by making "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal quotation marks omitted) (quoting *Grayson*, 79 F.3d at 1097); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). Nevertheless, Plaintiffs must put forth more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." *Morgan*, 551 F.3d at 1261 (alteration in original) (quoting *Haynes*, 696 F.2d at 887). Plaintiffs need only show their "positions are similar, not identical, to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096 (citations omitted).

      **i.**    **JFK and LAX Agents**

As evidence of similarly situated putative class members, Plaintiffs argue: (1) the same timekeeping software was used at the MIA, JFK and LAX facilities; (2) all Agents were subject to the same timekeeping violations, *i.e.*, the timekeeping software improperly rounded their time at the beginning of their shifts, and when coming back from meal breaks, and Agents were asked to work off-the-clock; and (3) Agents were not paid proper overtime compensation. (*See* Mot. 15; *see also* Gallaway Decl., Ex. B (Decl. of Carlos Martinez . . . ("Martinez Declaration")); *id.*, Ex. C (Decl. of Ricardo Babich ("Babich Declaration"))).

Defendant insists Plaintiffs' declarations are insufficient because they: (1) are "entirely conclusory"; (2) represent only two employees out of a possible class of "hundreds of Agents from several locations"; and (3) are based on "personal belief and conjecture, not personal knowledge." (Resp. 10). The Court agrees with Defendant insofar as these points apply to Agents at LAX and JFK. Both Plaintiffs work at Defendant's MIA facility and admittedly do not have knowledge regarding the experiences of Agents at Defendant's JFK or LAX facilities. (*See* Decl. of Kristin McGurn . . . ("McGurn Declaration") [ECF No. 65-1], Ex. A at 27; *id.*, Ex.

B at 65–66). Additionally, Martinez and Babich's Declarations make little mention of either JFK or LAX, except the declarants "believe" other agents from JFK and LAX would want to join the litigation. (*See* Martinez Decl. ¶ 11; Babich Decl. ¶ 11); *see also Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003) (finding affidavit of employee's "belie[f] other appraisers similarly situated to him exist" insufficient (alteration added; internal quotation marks omitted)).

Nor is it clear how Plaintiffs would know the alleged violations occurred at the LAX or JFK facilities at any rate — as evidenced by Martinez and Babich's Declarations themselves, the violations hinge on the somewhat fact-specific inquiry of whether Agents performed off-the-clock work, clocked in pre-shift and began work, or ended their meal breaks early to begin work. (*See, e.g.*, Martinez Decl. ¶ 5 ("Once I clock in, I immediately go to work. The same goes for other Agents *I see* at DHL's MIA Facility." (emphasis added)); *id.* ¶ 8 ("I was also required by my work load and DHL's managers and supervisors to put in hours off the clock."); *see also* Mot. 1 ("DHL has a uniform timekeeping policy . . . that unlawfully rounds an Agent's clock-in time . . . *when* that Agent clocks in up to 10 or 30 minutes prior to their shift . . . *and is performing work*" (alterations and emphases added))).

Plaintiffs seem to admit their lack of evidence, at least with respect to meal breaks at LAX. (*See* Reply 4 n.23). They acknowledge Agents were not able to clock-in early from lunch at LAX, yet assert "there is no evidence to counter the assertion that like Plaintiffs . . . Agents at LAX did not also perform uncompensated off the clock work during [meal breaks]." (*Id.* (alterations added)). This statement, however, misconstrues the burden — it is up to Plaintiffs to offer evidence, not simply "unsupported assertions." *Morgan*, 551 F.3d at 1261 (citation omitted).

7

Filed with their Reply, Plaintiffs submit six additional declarations, but only one declaration comes from an employee outside of MIA. (*See generally* Decl. of Lee S. Shalov . . . ("Shalov Declaration") [ECF No. 97] (attaching, *inter alia*, declarations from six Agents)). The LAX Agent, Curtis Rodgers, states he was designated a part-time employee who only worked at the LAX facility for approximately five months, during which time he was not compensated for work completed during the pre-shift rounding period and when coming back early from meal breaks.[4] (*See* Shalov Decl., Ex. L (Decl. of Curtis Rodgers . . . ("Rodgers Declaration")) ¶¶ 1–7). Unlike the MIA Agents, Rodgers does not state he was asked to perform any other off-the-clock work, thereby failing to confirm one of the three practices to have allegedly occurred at MIA. (*Compare* Martinez Decl. ¶ 8, *with* Rodgers Decl.).

More importantly, Rodgers states he would clock-in before the thirty-minute meal break ended and begin work (*see* Rodgers Decl. ¶ 6), even though Plaintiffs themselves admit "[a]fter a review of timekeeping and payroll records produced for . . . the LAX facility, it appears that Agents only at this facility *could not clock back in prior to the expiration of the full 30 minutes*" (*see* Reply 4 n.23 (alteration and italics added; underline in original); *see also* Wood Decl. ¶¶ 29–30; Sur-Reply 2). Whether this is an example of a misunderstanding by Rodgers, a difference in how meal breaks for part-time and full-time employees are treated, or subject to some other explanation is of no moment — the Rodgers Declaration, contradicted by Plaintiffs' own assertions, fails to provide a reasonable basis to believe Rodgers and LAX Agents are similarly situated, both to each other and to MIA Agents. And, in any event, Plaintiffs seem to concede the meal policy at LAX was different from the policies at MIA and JFK, and thus

---

[4] Rodgers is also unable to provide anything other than first names for two supervisors who allegedly knew he performed work uncompensated and two possible employees whom he has seen perform uncompensated work and "believes" would join the litigation. (*See* Rodgers Decl. ¶¶ 8–9).

employees at LAX would not be similarly situated with regard to alleged meal break claims. (*See* Reply 4 ("These common practices [regarding meal breaks] occurred routinely . . . at the JFK and MIA facilities." (alterations added)); *id.* 4 n.23 (noting LAX Agents "could not clock back in prior to the expiration of the full 30 minutes")). Accordingly, the Court finds the Rodgers Declaration insufficient to demonstrate LAX Agents are similarly situated to those at MIA.

Plaintiffs also submit additional evidence ("non-agent evidence") with their Motion and Reply, including evidence obtained in connection with a different lawsuit involving DHL, styled *Marshall v. Deutsche Post DHL*, No. 1:13-cv-01471-RJD-JO (E.D.N.Y. Mar. 20, 2013) ("*Marshall* Litigation").[5] (*See generally* Gallaway Decl.; Shalov Decl.). Plaintiffs argue these materials, coupled with the Agents' declarations they have submitted, demonstrate Agents at MIA, LAX, and JFK were "subject to a common policy and practice of unlawful time rounding, automatic meal break deductions and off-the-clock work." (Mot. 4). Plaintiffs highlight the fact they "are aware from the Marshall action that Defendant utilizes the same unlawful timekeeping system across all three facilities and all Employees clock in using the same timekeeping software." (*Id.* 15). Even assuming this is true, Plaintiffs' non-agent evidence, including evidence from the *Marshall* Litigation, fails to provide any reasonable basis for the Court to believe any Agents at LAX or JFK actually worked during the pre-shift or meal break periods.[6] Whether Agents actually worked during these times is essential to Plaintiffs' allegations. (*See id.*

---

[5] Defendants challenge Plaintiffs' use of evidence from the *Marshall* Litigation. (*See* Resp. 9 & n.7; Sur-Reply 3). The Court need not address these challenges, as it finds the evidence does not help Plaintiffs overcome their burden as to Agents at LAX or JFK and is not necessary to meet their burden as to MIA Agents.

[6] Additionally, the allegations regarding off-the-clock work performed before or after an Agent's shift (*see* Mot. 2), have nothing to do with DHL's system-wide timekeeping software or system. Plaintiffs submit no evidence Agents at LAX or JFK were asked to perform or did perform off-the-clock work, and in fact the Rodgers Declaration does not include such an allegation. (*See generally* Rodgers Decl.).

1 ("DHL has a uniform timekeeping policy . . . that unlawfully rounds an Agent's clock-in time . . . *when* that Agent clocks in up to 10 or 30 minutes prior to their shift . . . *and is performing work* (emphases and alterations added))). The Court cannot assume, based on unsupported allegations alone, such conduct occurred at LAX or JFK. *See Morgan*, 551 F.3d at 1261.

Additionally, the cases Plaintiffs cite are distinguishable from the case at hand vis-à-vis the LAX and JFK Agents. For instance, Plaintiffs cite *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298 (D. Kan. 2010); *Devries v. Morgan Stanley & Co. LLC*, No. 12-81223-CIV, 2014 WL 505157 (S.D. Fla. Feb. 7, 2014); and *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365 (N.D. W. Va. 2012), as support for the idea courts "routinely grant" certification when employers use unlawful one-sided rounding policies. (*See* Mot. 16). Unlike this case, *Shockey* and *Devries* both involved multiple affidavits from employees at different locations, supporting the notion the alleged violations were nationwide. *See Shockey*, 730 F. Supp. 2d at 1301, 1305–06; *Devries*, 2014 WL 505157, at *4. And in *Byard* the sufficiency of the evidence was not in dispute, as "defendants acknowledge[d] that the[] affidavits are sufficient to support the conditional certification of a collective action." 287 F.R.D. at 370 (alterations added).

Finally, Plaintiffs cite *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005), and *Wynder v. Applied Card Sys., Inc.*, No. 09-80004-CIV, 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009), for the proposition the declarations they submitted are sufficient to satisfy a class of Agents at MIA, JFK and LAX. (*See* Reply 7–8). But, similar to *Devries* and *Shockey*, *Pendlebury* involved affidavits from employees who had worked at four different stores. *See Pendlebury*, 2005 WL 84500, at *2. Plaintiffs' reliance on *Wynder* is also misplaced. In *Wynder,* the court did certify a class but refused to certify the nationwide one the plaintiff requested:

> The Court does find, however, that Defendant is correct that the scope of the notice must be limited. Simply put, Wynder has failed to establish that he is similarly situated to all current and former customer assistance supervisors employed by Defendant at any location. Wynder has failed to offer any evidence that the labor practices at issue extended beyond the Boca Raton, Florida location.

2009 WL 3255585, at *3.[7]

In sum, Plaintiffs have failed to carry their burden of showing JFK and LAX Agents are similarly situated to those at MIA. *See, e.g.*, *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762-Orl-28JGG, 2007 WL 1079291, at *3 (M.D. Fla. Apr. 9, 2007) (denying certification, in part because neither affiant "claim[s] knowledge of any alleged FLSA violations at any Hair Club location other than the Maitland office" (alteration added)); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (denying proposed class encompassing restaurants in six states because "Plaintiffs have not made a showing that any hourly wage employee at any of Defendant's restaurants, other than at the restaurant in Dothan where the named, individual Plaintiffs and the individuals who have filed Notices of Consent . . . worked, was subjected to employment practices which potentially violated the FLSA" (alteration added)).

    ii.    **MIA Agent***s*

In contrast to the limited showing as to Agents at LAX and JFK, Plaintiffs have satisfied their burden as to MIA Agents. Plaintiffs submitted numerous declarations from MIA Agents, all alleging substantially the same policy and practice violations. (*See, e.g.*, Martinez Decl.; Shalov Decl., Ex. K (Decl. of Luis Ramirez . . . ("Ramirez Decl."))). These declarations describe similar experiences from each of the declarants regarding working pre-shift after clocking in,

---

[7] Plaintiffs' citations to *Hipp*, *Morgan* and *Grayson* are similarly unavailing. (*See* Reply 8). *Hipp*, for example, merely states the fact plaintiffs may work in different geographical locations is not conclusive. *See Hipp*, 252 F.3d at 1219. The Court does not treat the fact Agents worked in different locations as conclusive; rather, it has examined all of the evidence and found Plaintiffs have not met their burden. Additionally, both *Morgan* and *Grayson* are factually distinguishable.

11

performing off-the-clock work, and clocking in early from meal breaks to begin work. (*Compare* Martinez Decl. ¶¶ 4–8, *with* Ramirez Decl. ¶¶ 4–9).

Defendant argues Plaintiffs have only demonstrated they "believe their supposed experience was typical of other agents in the MIA facility." (Resp. 13 (emphasis and internal quotation marks omitted)). To the contrary, Plaintiffs' declarations state they personally observed other Agents performing the same work pre-shift, off-the-clock, and during meal breaks. (*See, e.g.*, Martinez Decl. ¶ 5 ("Once I clock in [pre-shift], I immediately go to work. The same goes for other Agents I see at DHL's MIA facility." (alteration added)); *id.* ¶ 7 ("[O]nce I clock back in from my meal break, I go to work. The same goes for other Agents I see." (alteration added))). Defendant also insists Martinez and Babich are not similarly situated because they "admit to routinely skipping and being paid for their meal breaks or leaving early in lieu of taking unpaid time off." (Resp. 16; Sur-Reply 3–4). But Plaintiffs need only prove their positions are similar, not identical, *see Grayson*, 79 F.3d at 1096; it is enough at this stage that Martinez and Babich sometimes clocked in early from meal breaks and worked without compensation.[8]

Moreover, Defendant admits all Agents at MIA use a timekeeping system called Kronos to record their time; Agents who have a schedule in Kronos are subject to a thirty minute "grace period" if they punch in prior to their shift; and thirty minutes are automatically deducted for meal breaks if the Agent is full-time and has worked more than four hours. (*See* Wood Decl. ¶¶

---

[8] For the same reasons, the fact Martinez did not have a schedule in the timekeeping system from May 2015 to October 2015 (*see* Resp. 4; Sur-Reply 4), does not preclude the Court from finding Plaintiffs similarly situated to other MIA Agents.

2, 19, 25–26). Plaintiffs' evidence, taken together, demonstrates a reasonable basis to believe Plaintiffs are similarly situated to other MIA Agents.[9]

Additionally, Defendant argues adjudication of the claims will require "individualized inquiries," making certification of a collective action inappropriate. (*See* Resp. 13–18). DHL states "the only way to determine whether any employee actually performed work during a grace period would be to investigate each claim, as to each employee and each occurrence." (Resp. 14 (emphases omitted)). While ultimate resolution of the claims may require individualized inquiries, courts in this Circuit have conditionally certified other collective actions where defendants raised such issues. *See, e.g.*, *Gonzalez v. TZ Ins. Solutions, LLC*, No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at *3–4 (M.D. Fla. Mar. 26, 2014) (conditionally certifying class despite defendant's contention, *inter alia*, plaintiffs were supervised by different managers at different locations); *Devries*, 2014 WL 505157, at *4–5 (conditionally certifying class regarding off-the-clock work); *see also Hipp*, 252 F.3d at 1219 (upholding conditional certification despite defendant's claim "each Plaintiff's case was unique and required individual analysis of his or her working conditions").

Undeterred, Defendant cites a number of district court cases denying certification due to individualized inquires. (*See* Resp. 16–18; Sur-Reply 4–5). The Court finds these cases

---

[9] Defendant also contends the proposed class members are not similarly situated, as Agents at MIA, LAX, and JFK are governed by distinct collective bargaining agreements ("CBA") that address overtime, break periods and timekeeping policies. (*See* Resp. 11 n.10). This issue is moot given the Court has determined Agents from LAX and JFK will not be part of the class, and all MIA Agents are governed by the same CBA. (*See* Decl. of John Nuttall . . . ("Nutall Declaration") [ECF No. 65-3] ¶ 7 ("[A]ll operations employees at MIA are part of Teamsters Local 769 . . . [and] are covered by the Local 769 Miami Gateway CBA." (alterations added))).

Defendant also raises the argument Plaintiffs' claims are barred by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (*See* Resp. 11 n.9). Yet, Defendant does not cite a single case from this Circuit to support its assertion. Additionally, none of the cases cited involve making such a determination at the notice stage for certification of a collective action under 29 U.S.C. § 216(b).

distinguishable or otherwise unpersuasive. For instance, in *Udo v. Lincare, Inc.*, "the procedural posture of [the] case [was] such that analysis under the first stage recommended in *Hipp* seem[ed] inapt." No. 8:13-cv-1899-T-23TGW, 2014 WL 5354589, at *10–11 (M.D. Fla. Sept. 17, 2014) (alterations added). This is not the case here.

Moreover, in *Hilley v. Tacala, L.L.C.*, the court found "Plaintiff's allegations and evidence fail to support a finding that the members of the collective action have suffered a widespread pattern of FLSA violations." No. 2:12-CV-2691-SLB, 2014 WL 1246364, at *15 (N.D. Ala. Mar. 24, 2014); *see also Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398-CIV-UU, 2011 WL 6794438, at *5 n.6 (S.D. Fla. Apr. 19, 2011) ("Here, the quality and sufficiency of Plaintiff's evidence is at issue. The Court is unable to even arrive at a determination of whether the former Pharma Reps were similarly situated because the declarations that Plaintiff submits are insufficient."). Plaintiffs have put forth ample evidence to support their allegations of FLSA violations at MIA, both as to themselves and to other Agents at the facility.

Defendant also improperly attacks the merits of Plaintiffs' claims, arguing, for instance, DHL does not round employee work time. (*See* Resp. 13). Any inquiry into the merits of the claims is inappropriate at this stage. (*See* Reply 5–7); *see also Peña v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1300 (S.D. Fla. 2014) ("[I]n making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action." (alteration in original) (quoting *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 675 (S.D. Fla. 2013))). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility

determinations . . . in determining whether potential opt-in plaintiffs may be similarly situated." *Devries*, 2014 WL 505157, at *7 (alteration added).

Accordingly, Plaintiffs have put forth sufficient evidence at this stage to show they are similarly situated to putative class members. *See, e.g.*, *Grayson*, 79 F.3d at 1097; *Shockey*, 730 F. Supp. 2d at 1303–04.

### B. Desire to Opt-In

Regarding the desire of others to opt-in, each Plaintiff has submitted a declaration detailing his job duties, the alleged FLSA violations he was subjected to, and other individuals he believes would join the collective action if certified. (*See* Martinez Decl.; Babich Decl.). In the time since Plaintiffs filed their Motion, other Agents have opted into this lawsuit, including Agents who were named in Plaintiffs' declarations. (*Compare* Martinez Decl. ¶ 11, *with* Notice of Filing . . . [ECF No. 73], *and* Notice of Filing . . . [ECF No. 77]).

Plaintiffs have satisfied their burden of showing other Agents desire to opt-in to the litigation. *See, e.g.*, *Reyes*, 801 F. Supp. 2d at 1356 (finding a reasonable basis, based on four affidavits and the fact seven alleged similarly situated employees had filed consents, to demonstrate desire to opt-in); *Collado v. J. & G. Transport, Inc.*, No. 14-80467-CIV, 2014 WL 5390569, at *3–4 (S.D. Fla. Oct. 23, 2014) (finding two affidavits, one stating the affiant believed at least three employees would join and the other stating at least five, sufficient). Defendant expends little effort challenging this requirement in its Response, stating Plaintiffs have not produced any evidence the class would consist of more than a few plaintiffs. (*See* Resp. 18–19). However, since the Motion was filed, numerous other Agents have filed consents, as Plaintiffs point out in their Reply. (*See* Reply 3). Defendant does not address this issue in its Sur-Reply. (*See generally* Sur-Reply). Given the number of Agents who have filed consents

thus far, along with the declarations of certain Agents stating others wish to join (some of whom have filed consents to join already), Plaintiffs have met their burden.

### C. Production of List of Putative Class Members

Plaintiffs request the Court order Defendant to provide a list of each putative class member's name, last known physical address, last known email address, and last known telephone number in order to effectuate the notice process. (*See* Mot. 1). Defendant does not challenge this request. Similar to the court in *Collado*, the Court finds this request reasonable for the following reasons: (1) the information would be available through a formal request for production or interrogatory; (2) the statue of limitations continues to run; and (3) this information will increase the efficiency of the notice process. *See Collado*, 2014 WL 5390569, at *5. Accordingly, Defendant shall provide the requested information consistent with this Order.

### D. Proposed Notice

Plaintiffs submitted with the Motion a Proposed Notice. (*See* Gallaway Decl., Ex. H). While Defendant states, "the content, format and means of distribution for the notice and consent forms are inappropriate" (Resp. 19 n.19), it does not make any specific objections aside from this rather general one, nor does it cite any case law. The Court will not speculate as to Defendant's objections to the Proposed Notice.

Plaintiffs request they be allowed to send the Proposed Notice to each potential class member via First Class Mail with a pre-addressed return envelope and also via e-mail. (*See* Mot. 18–19). Additionally, they request a copy of the Proposed Notice be posted at Defendant's LAX, JFK, and MIA facilities. (*See id.* 19). The Court finds the means of transmitting the Proposed Notice appropriate. *See Pittman v. Comfort Systems USA (Southeast), Inc.*, No. 8:12-cv-2141-T-30TGW, 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) (approving notice

transmission via e-mail and regular mail); *Collado*, 2014 WL 5390569, at *6 (approving email and ordering notice to be posted "in a conspicuous location in each of Defendants' business offices where putative class members are expected to frequent"). Consistent with this Order, Plaintiffs may only transmit the approved notice to potential class members, as defined below. Additionally, Defendant is only required to post the approved notice at its MIA facility in a conspicuous location where Agents are expected to congregate.

Plaintiffs also request the Court give putative class members ninety (90) days to return the consent forms and allow Plaintiffs to transmit a reminder notice postcard by the sixtieth day. (*See* Mot. 19–20). The Court will allow putative class members to return consent forms within forty-five (45) days of the Court's approval of the notice, and Plaintiffs may send a reminder postcard thirty (30) days after the notice is approved. Furthermore, the Court approves Plaintiffs' request to have the approved notice transmitted and posted in Spanish and English. *See Collado*, 2014 WL 5390569, at *5.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 52]** is **GRANTED in part** and **DENIED in part** as follows:

1. A conditional class is certified as follows:

   All hourly paid non-exempt Agents who worked at MIA (Miami) who are or were employed within the three (3) years preceding the filing of this action by Defendant, and who were: (a) not compensated for all work performed while clocked-in; and/or (b) were not fully compensated for time worked over forty hours per week at overtime rates; and/or (c) were not compensated for all work performed while off-the-clock.

CASE NO. 15-22505-CIV-ALTONAGA/O'Sullivan

2. Plaintiffs shall revise the Proposed Notice consistent with this Order and submit it for approval by **Monday, February 8, 2016**. Plaintiffs shall also email the proposed order to altonaga@flsd.uscourts.gov in Word format.

3. Defendant shall produce to Plaintiffs a list of each putative class member's name, last known physical address, last known email address, and last known telephone number by **February 18, 2016**.

**DONE AND ORDERED** in Miami, Florida, this 5th day of February, 2016.

*[signature: Cecilia M. Altonaga]*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record